UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| James B. Darby, ) | Civil Action No.: 6:16-CV-0729-RBH |
| Plaintiff, ) | |
| v. ) | **ORDER** |
| Nancy A. Berryhill, Acting Commissioner ) of the Social Security Administration, ) | |
| Defendant. ) | |

Plaintiff James B. Darby ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court reverse the Commissioner's decision and remand the case back to the Commissioner for further consideration of medical opinions found within the record. [ECF #17].

**Factual Findings and Procedural History**

The facts, including the medical timeline and evidence contained within the record, are adequately set forth by the Magistrate Judge in the Report and Recommendation. [ECF #17, pp. 1-13]. Plaintiff has filed previous applications alleging disability beginning on April 8, 2010, that resulted in a denial of benefits in a decision dated August 29, 2012. [ECF #10-5, Ex. B1A]. Plaintiff filed this current application for disability insurance benefits ("DIB") on September 12, 2012, alleging that on

April 8, 2010, he became unable to work. Plaintiff later amended the alleged onset date to May 30, 2013. This application for benefits was denied initially and upon review. Around this same time, on May 14, 2013, Plaintiff filed for supplemental security income benefits ("SSI"). On June 14, 2014, Plaintiff participated in a hearing, and on November 12, 2014, Plaintiff received an unfavorable opinion. On January 14, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final decision of the Commissioner of Social Security.

The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> (2) The claimant has not engaged in substantial gainful activity since May 30, 2013, the amended alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: left ulnar neuropathy, right knee degenerative joint disease with meniscus tears, supraventricular tachycardia, and rheumatoid arthritis (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant could lift up to 20-30 pounds occasionally and lift or carry 10-15 pounds occasionally; the claimant could sit up to 4 hours out of an 8-hour day and the claimant could stand and walk a total of 7 hours out of an 8-hour day (stand 4 out of 8 hours and walk 3 out of 8 hours), both sitting and standing/walking done with normal breaks; the claimant could use the upper extremity to push/pull on a frequent basis with the right (dominant) upper extremity and on an occasional basis with the left (nondominant) upper extremity; the claimant could use the lower extremities for the operation of foot controls on a

frequent basis bilaterally; the claimant could never climb ladders, ropes, or scaffolds; the claimant could climb ramps or stairs up to1/2 of the work period, which is quantified as 4 hours out of 8 hours; the claimant could frequently balance, stoop up to a frequent basis, and occasionally crouch, kneel, and crawl; the claimant could perform gross manipulation (handling) and fine manipulation (fingering items no smaller than the size of a paperclip) with the left upper extremity on an occasional basis; there is no limitation with the right (dominant) upper extremity regarding manipulative actions (gross or fine); the claimant should avoid concentrated exposure to excessive vibration; there are no mental limitations.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

(7) The claimant was born on April 3, 1967, and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 C.F.R. 404. 1563 and 416.963).

(8) The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2013, the amended alleged onset date, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

[ECF #10-2, pp. 59-83].

On March 8, 2016, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #13, ECF #14, ECF #15], and the

Magistrate Judge issued his Report and Recommendation ("R&R") on July 7, 2017, recommending that the Commissioner's decision be reversed and remanded for further consideration of the medical opinions in the record [ECF #17, p. 21]. The Magistrate Judge recommends reversing the Commissioner's decision, pointing to the fact that the record does not support the ALJ's rejection of at least four medical opinions in forming Plaintiff's residual functional capacity evaluation. [ECF #17, pp. 20-21]. Defendant filed objections on July 19, 2017. [ECF #18]. Plaintiff responded to these objections on August 1, 2017. [ECF #20].

## Standard of Review

### I. Judicial Review of the Commissioner's Findings

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence

4

supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under

5

a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined

(1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## Analysis

Plaintiff has a well-documented medical history which the ALJ adequately set forth in rendering the decision in this case. The Magistrate Judge likewise set forth Plaintiff's extensive medical history, which includes treatment related to neck and lower back injuries related to a motor vehicle collision, left hand pain swelling, apparently due in part to a piece of metal lodged in his wrist, numbness in his left upper extremity, issues with what has been described as a "racing heart" and for chest pain, right knee pain, left knee pain, and arthritis. [ECF #17, pp. 5-12]. The Magistrate Judge considered all of the medical testimony within the record and determined that the ALJ improperly rejected several medical opinions from Plaintiff's treating physicians and state agency consultants, instead formulating his own RFC. [ECF #17, p. 21]. for this reason, the Magistrate Judge recommends remanding the case for further consideration of the medical opinions of record.

In response, the Commissioner argues in the objections that the RFC determination is the ultimate responsibility of the ALJ [ECF #18, p. 4]. Specifically, the Commissioner points out that the RFC is an "assessment," rather than a "medical" opinion. [ECF #18, p. 2]. Moreover, the Commissioner argues that the Magistrate Judge's recommendation should be rejected because the courts may not re-weigh evidence in analyzing the ALJ's findings. [ECF #18, p. 3]. In Plaintiff's response to these objections, Plaintiff refutes the Commissioner's claim that the Magistrate Judge overlooked the fact that the RFC determination is reserved for the Commissioner and explains that the

7

issue, correctly pointed out by the Magistrate Judge, is that the ALJ did not provide sufficient reasons under the established rules for rejecting all of the medical opinions and instead provided an RFC determination that was not supported by any of the opinions of the doctors in this case. [ECF #20, pp. 2-4].

The medical evidence in the record opining as to Plaintiff's physical and mental conditions are numerous. A non-treating, state-agency physician, Dr. Janet Boland, completed a Psychiatric Review Technique Questionnaire indicating Plaintiff had no medically determinable mental impairments. [ECF #10-4, Ex. B3A]. Dr. Anna P. Williams, another non-examining physician indicated the same findings regarding Plaintiff's mental state. [ECF #10-4, Ex. B6A]. With respect to RFC determinations, a non-examining consultant, Dr. Michael Beinor, completed an RFC assessment on January 17, 2013 and found Plaintiff was capable of performing sedentary work with postural, manipulative and environmental limitations. [ECF #10-4, Ex. B3A]. A second RFC assessment was completed by non-examining physician Dr. Dale Van Slooten on March 22, 2013, who also indicated Plaintiff was capable of performing sedentary work with postural, manipulative, and environmental limitations. [ECF #10-4, Ex. B6A]. On May 30, 2013, Dr. Bradberry, a treating physician, indicated that while Plaintiff did not have any mental limitations, Plaintiff was not capable of climbing ladders, ropes, scaffolds, ramps, or stairs, stoop kneel, crouch, and crawl and had "torn ligaments" in his knees. [ECF #10-9, Ex. B18F]. Dr. Bradberry further indicated on this questionnaire that Plaintiff had manipulative limitations due to left hand numbness, no limitations on exposure to extreme heat, wetness, humidity and noise but should avoid exposure to dust, fumes and the like due to pain and swollen joints, and further that Plaintiff was "totally restricted and thus unable to function at a productive level of work" and needed treatment for rheumatoid arthritis. [ECF #10-9, Ex. B18F]. On February 6, 2014, Dr. Bradberry again

8

completed a form indicating Plaintiff could lift less than ten pounds, stand and walk less than two hours, sit less than two hours due to swelling, joint effusions, and pain in his lower extremities and hands, that Plaintiff should never kneel, crouch, crawl, or stoop, and Plaintiff was limited in pushing and pulling with his upper and lower extremities due to swelling/joint effusions/pain in lower extremities and hands. [ECF #10-9, Ex. B20F]. On May 13, 2014, Dr. Toussaint, a treating physician, indicated Plaintiff's "causes of disability" were: (1) rheumatoid arthritis and (2) a previous wrist injury severing a nerve that occurred while working. [ECF #10-10, Ex. B25F]. Dr. Toussaint also indicated Plaintiff had severe rheumatoid arthritis and was "completely disabled" at this point. [ECF #10-10, Ex. B25F]. Two days later, Dr. Bradberry faxed an undated note to Plaintiff's attorney also indicating Plaintiff was "completely disabled" and that Plaintiff's laboratory and x-ray results support a finding that he has advanced disease and chronic pain with ongoing joint destruction. [ECF #10-10, Ex. B26F].

Despite the medical opinions listed above, from both non-treating examiners (both of whom opined that Plaintiff could perform sedentary work) and Plaintiff's treating physicians, the ALJ determined that Plaintiff had the RFC to perform light work. Specifically, the ALJ gave little weight to two state agency consultants, who indicated Plaintiff could perform only sedentary work, as well as giving little weight to treating physicians Drs. Toussaint and Bradberry, both of whom indicated Plaintiff had disabling conditions. In fact, the ALJ conceded that the opinions of both state agency consultants were generally consistent with the treating physicians, however he still concluded that in his opinion, the record did not support these conclusions. While it is certainly true that the RFC is an assessment made by the ALJ, the Magistrate Judge acknowledged as much in the R&R, contrary to the Commissioner's objections. Even so, the Commissioner argues that the Magistrate Judge not only failed to acknowledge this point, but also that the Magistrate Judge re-weighed the evidence rather than

9

analyzing this case under the substantial evidence standard of review. This Court does not agree that the Magistrate Judge re-weighed the evidence, and further finds that it cannot determine whether substantial evidence support the ALJ's RFC determination in this case.

An ALJ must consider and weigh all medical opinions included in a claimant's case. 20 C.F.R. § 404.1527(c). Moreover, an ALJ must give the opinion of a treating physician controlling weight if that opinion is well-supported by "medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence" within the record. 20 C.F.R. § 404.1527(c)(2). In considering the appropriate weight to give a treating physician's opinion, an ALJ must give good reasons in explaining the weight given such an opinion. 20 C.F.R. § 404.1527(c)(2). In weighing this evidence, an ALJ must avoid substituting his own medical judgment for that of the treating physician or physicians where the opinions of the treating physicians are supported by medical evidence. *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-CV-564, 2011 WL 549861, at *7 (S.D. Ohio 2011). In *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985), the court noted that the ALJ improperly discredited the opinions of a treating doctor when the ALJ determined that the opinions were contrary to the objective medical evidence in the file. The court further noted that the ALJ instead independently reviewed and interpreted the laboratory reports in coming to a different conclusion than the treating physician. *Id; see also Ledbetter v. Colvin*, No. 2:14-100-TMC, 2015 WL 4878712, at *7 (D.S.C. Aug. 14, 2015) (reversing and remanding a case where the Magistrate Judge found that "what stands out in this case is the lack of **any** accepted medical opinion" and further stating that like *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp.2d 592, 600-01 (S.D. Ohio 2013), the record in that case "does not contain **a single opinion** from **any medical source** that indicates Plaintiff is functionally capable" of performing light work.) (emphasis in original).

Similarly, here the ALJ determined that although four of the opinions from physicians on file, two of which were from treating physicians, were all generally consistent, the record nonetheless did not support these all seemingly similar positions. In discussing the weight of the state agency physicians, the ALJ specifically points out that although these physicians are well-trained and well-qualified, he discounts their opinion because one doctor is a gynecologist and one is a primary care provider. [ECF #10-2, p. 67]. He offers the same reason for giving Drs. Bradberry and Toussaint less than full weight, in pointing out that these doctors are primary care physicians, rather than specialists. [ECF #10-2, p. 67]. Later in his decision, the ALJ gives little weight to the treating physicians' opinions because he states very simply, "their remarks understate the claimant's level of physical functioning." [ECF #10-2, p. 69]. The ALJ's discussion of the treating physicians' medical records and notes, though extensive, appear to center around picking out isolated statements within Plaintiff's many pages of medical records and noting that the statement appears inconsistent with another statement somewhere else in the record. However, the ALJ does not dispute that all four of these physicians who reviewed the medical records appear to have generally consistent findings. The Court has conducted its own review of the medical records and has considered the fact that the ALJ rejected giving great weight to any of the physicians' opinions, in part because they weren't specialists in a given area, and instead determined that Plaintiff had the physical capacity to perform light work under the RFC, as determined by his own assessment of the medical records. As noted by the Magistrate Judge, the record does not contain a medical source indicating Plaintiff has the functional capacity to perform light work. Accordingly, this Court agrees with the Magistrate Judge's recommendation to reverse the ruling of the Commissioner and remand this matter back to the Commissioner, as this Court is unable to conclude that substantial evidence supports the findings of the ALJ based on the reasons given for rejecting four

medical opinions in the record.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Defendant's objections to the R & R, Plaintiff's response to those objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #17]. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is remanded to the Commissioner for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
August 23, 2017  R. Bryan Harwell
United States District Judge